

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 6, 2013**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BORGER HOSPITALITY, INC, | § | Case No. 10-20170-RLJ-11 |
| | § | |
| Debtor. | § | |

## MEMORANDUM OPINION

The Court issues its findings of fact and conclusions of law concerning the objection to claim of New Fredericksburg, Inc. [Docket No. 110] by Stiles Livestock Co., Ltd., William G. Stiles, and Robert W. Stiles (collectively referred to as "Stiles"). Hearing on the matter was held on May 21, 2013.

### I. FINDINGS OF FACT

**A.    Borger Hospitality, Inc. Bankruptcy Filing**

1.    Borger Hospitality, Inc. ("BHI") filed bankruptcy under chapter 11 of the Bankruptcy Code on March 12, 2010. Harish Patel ("Patel") was the principal of BHI at the time of its filing. According to Patel, the company was formed in either 2006 or early 2007; he and Chetan Parikh were the shareholders of BHI at the time of its formation.

2. BHI was created for the purpose of constructing and operating two hotels, one in Snyder, Texas (the "Snyder Hotel") and the other in Stanton, Texas (the "Stanton Hotel"). BHI entered into a contract with Auer Corporation ("Auer") as general contractor for the construction of the hotels. Both the Snyder Hotel and the Stanton Hotel were to be operated as "Baymont Inn & Suites" under a franchise agreement with Baymont Franchise Systems, Inc.

3. Citizens National Bank of Childress, Texas provided financing for the construction of the Stanton Hotel. West Texas State Bank of Snyder, Texas provided financing for the Snyder Hotel.

4. BHI experienced problems concerning the construction of the hotels which were the subject of an adversary proceeding [Adversary No. 10-02022] between BHI (and other hotel entities) and Auer (and its principal, Raymond Teague) and a multi-day trial before this Court.

5. In addition to the Stanton Hotel and the Snyder Hotel, Patel operated and had significant ownership interests in approximately a dozen other hotel properties and entities around the state of Texas.

6. BHI filed its Schedules and Statement of Financial Affairs on April 2, 2010. They were signed and thus approved by Patel.

7. The Statement of Financial Affairs reflects that the following individuals owned an interest in BHI:

| | |
|---|---|
| Lallubhai Patel | 10.00% |
| Govind Patel | 10.00% |
| Preyesh Kumar | 10.00% |
| Harish L. Patel | 10.00% |
| William G. Stiles, Jr. | 15.00% |

|                    |         |
|--------------------|---------|
| Robert W. Stiles   | 15.00%  |
| Devangi A. Desai   | 10.00%  |
| Deepa Floyd        | 10.00%  |
| Kavita Loonker     | 5.00%   |

*See* Stiles Exhibit 102.[1]

**B.    Claim of New Fredericksburg**

8.    On July 14, 2010, New Fredericksburg, Inc. ("New Fredericksburg") filed a proof of claim [Claim No. 23-1] in the BHI bankruptcy case for $274,000 as an unsecured claim. *See* Stiles Exhibit 202. The stated basis for the claim was a loan made by New Fredericksburg to BHI. Patel signed the proof of claim as president of New Fredericksburg. The proof of claim was not supported with any documentation evidencing the claim.

9.    According to BHI's Schedules, New Fredericksburg (designated as "NEW FDG" in the schedules) held a "Note Payable" regarding "Snyder" in the amount of $274,000. *See* Stiles Exhibit 101 at 14. No address and no other information regarding the date of the obligation or the consideration for the "note" is disclosed. The schedules state that the debt is contingent and disputed. *See id.*

**C.    Payments by New Fredericksburg on Behalf of BHI**

10.    New Fredericksburg, on July 10, 2009, paid Patriot Construction the sum of $100,000, which check was signed by Patel on New Fredericksburg's account. *See* Stiles Exhibit 207. Patel testified that such check was to cover a draw request by Patriot Construction; Patriot

---

[1]The total ownership interests as reflected are only 95%.

Construction is an entity that had been retained to complete construction on the Snyder Hotel after the dispute broke-out with Auer.

11. On July 30, 2009, New Fredericksburg issued its check payable to West Texas State Bank in the amount of $64,045.37. *See* Stiles Exhibit 208. This check was also signed by Patel. Patel testified it represented interest due to the bank on the financing of the Snyder Hotel with West Texas State Bank.

12. On September 11, 2009, New Fredericksburg issued its check made payable to Patriot Construction in the amount of $110,000; such check was, as with the other two payments, signed by Patel on New Fredericksburg's account. *See* Stiles Exhibit 210. Patel testified this check was to pay a draw request by Patriot Construction on the Snyder Hotel.

**D.    Patel's Explanation**

13. Patel testified that the three transfers represented short-term loans by New Fredericksburg to BHI. Such "loans" were not evidenced by promissory notes or similar type documents and were thus ostensibly made without a definite stated time for repayment, a stated interest rate, or terms of repayment.

14. Patel and other family members of his are the owners of New Fredericksburg; he is the president and a director of New Fredericksburg and the person in charge of New Fredericksburg.

15. Patel explained that the Snyder Hotel was in financial straits given the problems with its general contractor, Auer; that it needed funds to pay Patriot Construction, the general contractor that was brought-in to complete the project, and to pay West Texas State Bank. He testified that BHI was unable to obtain additional, traditional loans, and thus asked other shareholders of BHI for additional funding. He testified that they agreed to do so provided they would be repaid.

16. Patel, along with Preyesh Kumar, arranged to have New Fredericksburg put-up the

additional necessary funds for the project. New Fredericksburg and BHI had common shareholders. The funds were provided without backup documentation, save for the checks issued by New Fredericksburg. Patel testified this was done by agreement and with the understanding that the transfer of their funds constituted loans to be repaid before New Fredericksburg began construction on its own hotel project.

**E.   Other Relevant Evidence**

17.   The evidence indicates that Patel and Raymond Teague, the principal of Auer, conspired together to divert funds from other projects, specifically a project in Childress, Texas, and one in Perryton, Texas. They discussed using such funds for the Snyder Hotel project.

18.   One of the investors of BHI, Govind Patel, invested at least $275,000 for his interest. *See* Stiles Exhibits 307–09. Another investor, Lallubhai Patel, invested over $400,000 and made a $10,000 loan. *See* Stiles Exhibits 407–08.

19.   The Stiles parties, the objectors here, made both capital contributions and loans to BHI. William G. Stiles, Jr. filed his proof of claim reflecting a claim from, he states, a series of loans to BHI with a balance at filing of $510,649.01. *See* Stiles Exhibit 115. The "loans," however, include $250,000 characterized at the time as an investment. *Id*. at Exhibits A and B. Stiles Livestock Co., Ltd. made loans to BHI and asserts a claim of $530,104.04. *See* Stiles Exhibit 116. Robert W. Stiles made loans to BHI and asserts a claim of $494,900.00. *See* Stiles Exhibit 117.

20.   The Stiles loans were evidenced by promissory notes; their investments and their respective interests in BHI are not disputed.

21.   Patriot Construction was paid over $315,000 by BHI for work performed on BHI. *See*

Patel Exhibit 2.  After such sum was paid, Patriot was still owed approximately $212,000 for the project, and BHI had no available funds with which to make the payment.

22.     Neither New Fredericksburg nor BHI prepared formal resolutions authorizing the transactions by which New Fredericksburg made the payments.

23.     The Court is satisfied that the transfers from New Fredericksburg that constitute the basis for its claim were done for the benefit of BHI.

24.     The $274,000 in transfers by New Fredericksburg for the benefit of BHI were carried on BHI's general ledger as "Shareholder Loans" and as a note payable by BHI.  *See* Exhibit 7 to Deposition (Stiles Exhibit 110) at 49.  New Fredericksburg was never reflected as a shareholder of BHI and was never issued a K-1 evidencing an equity interest in BHI.

## II. CONCLUSIONS OF LAW

1.      As creditors of BHI, the Stiles parties objected to New Fredericksburg's claim, asserting that the proof of claim has no supporting documentation, that it is based on an "unauthorized" transfer of funds from New Fredericksburg to BHI, that it had been "reduced" since its filing, and that it is subject to disallowance "to the extent that BHI possesses one or more chapter 5 claims" against New Fredericksburg that New Fredericksburg has not paid.  *See* Stiles Exhibit 203.  By its pleading, Stiles requests that the claim be disallowed.  *See id.*  At the hearing, Stiles recast its objection; it argued that New Fredericksburg's "loans" should be recharacterized as investments or capital contributions and thus, presumably, subject to subordination.  Stiles's recharacterization theory is principally based on the lack of documentation supporting the loans. New Fredericksburg, principally through the testimony of Patel, contends the payments by New Fredericksburg were at all times intended to be loans and were so treated.

2.      A bankruptcy court may recharacterize a claim as an equity interest.  *See In re Lothian*

*Oil Inc.*, 650 F.3d 539, 542 (5th Cir. 2011). Any such recharacterization is done in accordance with applicable state law. *Id*.

3.  Texas law, the controlling state law here, provides a multi-factored test in assessing whether debt should be treated as equity; in doing so, Texas courts, and thus federal courts applying Texas law, look to the tests employed by federal tax law cases. *Id*. at 544. These include a 16-factor test as set forth in *Fin Hay Realty Co. v. United States*, 398 F.2d 694, 696 (3d Cir. 1968); a 13-factor test from *Estate of Mixon v. United States*, 464 F.2d 394, 402 (5th Cir. 1972); and an 11-factor test from *Jones v. United States*, 659 F.2d 618, 622 n.12 (5th Cir. 1981).

4.  As with other factor-driven tests, the Court reviews the evidence in light of all factors, "while realizing that the various factors are not of equal significance and that no one factor is controlling." *Lothian Oil*, 650 F.3d at 544 (quoting *Mixon*, 464 F.2d at 402). Additionally, the various factors "are only aids in answering the ultimate question whether the investment, analyzed in terms of its economic reality, constitutes risk capital entirely subject to the fortunes of the corporate venture or represents a strict debtor-creditor relationship." *Fin Hay Realty*, 398 F.2d at 697.

5.  Factors considered are the following:

> (1) the intent of the parties; (2) the identity between creditors and shareholders; (3) the extent of participation in management by the holder of the instrument; (4) the ability of the corporation to obtain funds from outside sources; (5) the 'thinness' of the capital structure in relation to debt; (6) the risk involved; (7) the formal indicia of the arrangement; (8) the relative position of the obligees as to other creditors regarding the payment of interest and principal; (9) the voting power of the holder of the instrument; (10) the provision of a fixed rate of interest; (11) a contingency on the obligation to repay; (12) the source of the interest payments; (13) the presence or absence of a fixed maturity date; (14) a provision for redemption by the corporation; (15) a provision for redemption at the option of the holder; and (16) the timing of the advance with reference to the organization of the corporation.

*Id.* at 696. Yet additional factors are the name of the instrument, if any, memorializing the deal, *Mixon*, 464 F.2d at 402, and the right to enforce payment of principal and interest, *Jones*, 659 F.2d at 622 n.12.

6. On a more basic level, the Court notes that creditors and investors are distinguishable in the way they each view the solvency or insolvency of the enterprise with which they are dealing. *In re Deep Marine Holdings, Inc.*, No. 10-03116, 2011 WL 160595, *5 (Bankr. S.D. Tex. Jan. 19, 2011). For example, if the enterprise prospers, a creditor expects nothing more than repayment of its fixed debt. *Id*. In fact, the creditors rely on the *equity* provided by the company's investors. *Id*. at *6. Investors, however, look to share in the profits to the exclusion of creditors. *Id*. at *5. The flip side of this expectation is the enhanced risk of insolvency borne by investors. *Id*. The subordination provisions of the Bankruptcy Code, both § 510(b) (mandatory subordination of damage claims arising from purchase of a security) and the absolute priority rule set forth at § 1129(b) of the Bankruptcy Code (providing that "unsecured creditors stand ahead of investors in the receiving line and their claims must be satisfied before any investment loss is compensated," *In re SeaQuest Diving, LP*, 579 F.3d 411, 420 n.5 (5th Cir. 2009)), are said to arise from these basic expectations and, thus, the very nature of investments compared to loans.

7. The lack of documentation evidencing the three transactions here, along with the common interests, lends some support to Stiles's unpleaded recharacterization theory. In addition, BHI was obviously in dire financial straits at the time of BHI's payments; indeed, that is what precipitated the payments. BHI had no available capital and the risk of the "loans" was great. As previously stated, the terms of repayment were also unspecified.

8. The lack of documentation and BHI's lack of capital does not resolve the question,

however. The preponderance of the evidence supports New Fredicksburg's assertion, through its proof of claim, that it is a general unsecured creditor. The funds flowed by check directly to either BHI's general contractor or its construction lender. Equity interests were never issued in return. The payments were treated on BHI's books as notes payable; BHI did not transfer or purport to transfer any equity interest to New Fredericksburg. These basic facts subsume the factor-driven analysis. The loans were made at a time when BHI was in dire need of funds, which explains the informal nature of the deals.

9. The deals are not without suspicion, especially given Patel's involvement on both sides of the transactions and his disputing New Fredericksburg's debt in the BHI schedules. Patel's actions throughout are questionable and are considered for possible further inquiry. Honesty and candor are required in the preparation and filing of bankruptcy schedules.

10. The claim of New Fredericksburg is allowed as a general unsecured claim; the Stiles objection is overruled.

11. Findings of fact may be considered conclusions of law and conclusions of law may be considered findings of fact.

### End of Memorandum Opinion ###